UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| IN RE VARIOUS SOCIAL SECURITY CASES AFFECTED BY THE SIXTH CIRCUIT DECISION IN HICKS V. BERRYHILL, NO. 17-5206, | ) ) ) ) ) | Civil Case Nos. | |
|---|---|---|---|
| | ) | 0:16-cv-0063-GFVT | 7:16-cv-0191-GFVT |
| | ) | 0:16-cv-0092-GFVT | 7:16-cv-0198-GFVT |
| | ) | 3:18-cv-0006-GFVT | 7:16-cv-0216-GFVT |
| | ) | 5:16-cv-0340-GFVT | 7:16-cv-0242-GFVT |
| | ) | 5:16-cv-0402-GFVT | 7:16-cv-0253-GFVT |
| | ) | 5:16-cv-0456-GFVT | 7:16-cv-0267-GFVT |
| | ) | 7:16-cv-0049-GFVT | 7:16-cv-0294-GFVT |
| | ) | 7:16-cv-0061-GFVT | 7:16-cv-0295-GFVT |
| | ) | 7:16-cv-0063-GFVT | 7:17-cv-0010-GFVT |
| | ) | 7:16-cv-0084-GFVT | 7:17-cv-0017-GFVT |
| | ) | 7:16-cv-0086-GFVT | 7:17-cv-0026-GFVT |
| | ) | 7:16-cv-0110-GFVT | 7:17-cv-0050-GFVT |
| | ) | 7:16-cv-0116-GFVT | 7:17-cv-0069-GFVT |
| | ) | 7:16-cv-0121-GFVT | 7:17-cv-0077-GFVT |
| | ) | 7:16-cv-0139-GFVT | 7:17-cv-0083-GFVT |
| | ) | 7:16-cv-0150-GFVT | 7:17-cv-0121-GFVT |
| | ) | 7:16-cv-0161-GFVT | 7:17-cv-0141-GFVT |
| | ) | 7:16-cv-0172-GFVT | 7:17-cv-0189-GFVT |
| | ) | 7:16-cv-0175-GFVT | 7:18-cv-0005-GFVT |
| | ) ) ) | **MEMORANDUM OPINION** | |
| | ) ) | **&** | |
| | ) ) | **ORDER** | |
| | ) ) | | |

\*\*\* \*\*\* \*\*\* \*\*\*

**I**

**A**

The Social Security Administration Office of the Inspector General noticed something strange—an astonishingly high approval of benefits for some of Eric C. Conn's clients. *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018). Believing that fraud was being

perpetrated, the OIG began an investigation and identified Mr.Conn, Administrative Law Judge David Daugherty, and four doctors, Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Fredereric Huffnagle, M.D., and David P. Herr, D.O. as the culprits. *Id.* The OIG came to believe that Mr. Conn "submitted pre-completed 'template' Residual Functional Capacity ["RFC"] forms purportedly from [the four suspected doctors] [. . .] in support of the individuals' applications for benefits." *Id.* at 794. Using that information, the OIG flagged 1,787 cases, including these plaintiffs, who they suspected were tainted by fraud. *Id.* As with all suspected fraud cases, this began the redetermination of benefits process. *Id*.

So, the Commissioner sent letters to around 1,500 individuals explaining there "was reason to believe fraud was involved" in determining their eligibility. *Id.* And, the letter explained that the Administration was required to "disregard [all] evidence from one of the [suspected] medical providers" if it was submitted by Eric C. Conn or his associates. *Id.* As a result, the SSA could not consider the suspected doctors' examinations of the plaintiffs, including testing performed and behavioral observations. *Id.* In all these cases the SSA has acknowledge that it excluded the medical records from one of the named doctors. No plaintiffs' benefits survived this redetermination process. *Id*. at 795.

A group of plaintiffs, similarly situated to these plaintiffs, challenged the legality of the SSA's redetermination process and won. In *Hicks*, the Sixth Circuit found that the SSA violated both the Due Process Clause of the Constitution and the Administrative Procedure Act. *Id.* at 792. The law required the plaintiffs have an opportunity to show their evidence was not tainted by fraud—and they were not. As a result, the plaintiffs were entitled to summary judgment. *Id.* at 813.

Moreover, the Court found "evidence demonstrating that the ALJs [. . .] essentially rejected the only remaining medical opinions that could have established plaintiffs' claims based on the OIG's off-the-record determination that the records involved fraud determinations plaintiffs had no opportunity to rebut or contest." *Id.* Because the SSA's failure to comply with the APA's formal-adjudication requirements was not harmless, reversal and remand was required. *Id.* at 805.

These cases remain stayed while the Court waited for the Sixth Circuit to rule. Now, with decision in hand, both sides move for remand. The plaintiffs seek remand under the fourth sentence of 42 U.S.C. § 405(g) and the Commissioner seeks remand under the sixth sentence of § 405(g).

**B**

Courts can only grant two types of remand under 42 U.S.C § 405(g) in Social Security cases: sentence four and sentence six. *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991). The Court explains each in turn.

The first kind, appearing in sentence four of § 405(g), allows the courts to "enter, upon pleadings and transcript of the record, a judgment affirming, modify, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." That is, it permits the Court to make a substantive ruling about the correctness of the Commissioner's decision and then enter a judgment either affirming, modifying, or reversing the decision.

The second, seen in sentence six of § 405(g), provides that:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Instead of substantively reaching the merits, then, the Court can remand if: (1) before filing a response in an action, the Commissioner requests remand with good cause; or (2) new evidence comes to light that was both unavailable to the claimant at the time of the administrative proceeding and may have changed the outcome of the prior proceeding, and there is good cause shown for failing to incorporate the evidence into the record in the prior proceeding.

## II

The Court must answer two questions: (i) which remand is appropriate; and (ii) should the plaintiffs' benefits be reinstated. The Court finds that because it is making a substantive ruling on the correctness of the Commissioner's ruling it must remand under sentence four. Likewise, the same process that results in a sentence four remand requires that the plaintiffs must have their benefits reinstated.

## A

When the Commissioner has erred in reaching her decision to deny benefits a sentence four remand is required. *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996). And, a Commissioner has erred when she "fail[s] to provide a full and fair hearing." *Melkonyan*, 501 U.S. at 101 (quoting H.R. Rep. No. 96-100, at 13 (1979)). Here, the Sixth Circuit found the Commissioner failed to provide a full and fair hearing when she did not comply with the APA. The Circuit Court's direction to enter summary judgment based on the process provided cannot be clearer—the SSA must do it again. *Hicks*, 909 F.3d at 805. At bottom, the Sixth Circuit's ruling is a substantive one. Therefore, a remand under sentence four is required.

Neither the potential for new evidence nor the procedural posture dictates a different conclusion. Nothing precludes an ALJ from considering new evidence under a sentence four remand. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994). Indeed, the fatally defective redetermination hearing means the process begins anew as if the original hearing never happened. *Hicks* 909 F.3d at 813. Similarly, when the defective process is the focus, the posture is beside the point.

Nor is this the case where the Court is remanding because new evidence has come to light which shows the ALJ's original determination was improper. *See Melkonyan*, 501 U.S. at 100. Instead, the Court is looking at what evidence was allowed—not the evidence itself. Only a sentence four remand allows this Court to fully terminate its jurisdiction for the redetermination process to restart. As such, a sentence four remand is necessary. *See Jackson*, 99 F.3d at 1095 (cleaned up).

**B**

Before the government can deprive an individual of Social Security benefits, it must afford them procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). And, procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (cleaned up). In *Hicks*, the Court determined that the Commissioner's process denied plaintiffs the opportunity to be heard in a meaningful way. The process considered by the *Hicks* court is indistinguishable from the process afforded these plaintiffs. Like those cases, the SSA has acknowledge they excluded all medical documents in their entirety from the suspected medical providers. Therefore, the plaintiffs must have their benefits reinstated until due process has been provided. *Hicks*, 909 F.3d at 797; *Hicks v. Berryhill*, 2017 WL 1227929 (E.D. Ky. 2017).

The SSA's own regulations demand the same conclusion. *Berryhill*, 2017 WL 1227929, at *3.[1] Before Social Security benefits are terminated, the SSA must provide a hearing. *See* Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-1-3-25(C)(5). And, where the hearing was constitutionally inadequate—it is the same as no hearing at all.

That Circuit precedent requires determination of all factual issues before benefits are "awarded" at the initial determination stage does not change this result. *Faucher*, 17 F.3d at 175. Here, the Court simply reinstates benefits improperly taken away. It cannot be that this Court is impotent to cure procedural violations. And, for these plaintiffs, the only way to remedy a procedural violation is reinstatement of benefits.

### III

Nothing in the above should be construed to indicate the validity of the plaintiffs' underlying claims. Instead, this Order simply returns the process to its status before the improper redetermination hearings. Until the SSA satisfies its legal requirements these plaintiffs must receive their benefits. And, the SSA must adjust any overpayment that it has sought from the plaintiffs in these cases until it proves through a valid hearing that they are not entitled to benefits. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 705-06 (1979). Accordingly, and the Court being duly and sufficiently advised, it is hereby **ORDERED** as follows:

1. The Commissioner's motions to remand pursuant to sentence six of 42 U.S.C. § 405 (g) are **DENIED**;

2. The Commissioner's decisions denying the plaintiffs' disability claims on redetermination are hereby **VACATED**;

---

[1] The Commissioner acknowledged as much in Hicks when she agreed to reinstate benefits if the Court reversed the Commissioner's redetermination decision. *Berryhill*, 2017 WL 1227929, at *3.

3. The plaintiffs' requests to reinstate benefits pending the Commissioner's decision on remand are **GRANTED** consistent with this opinion;

4. Pursuant to sentence four of 42 U.S.C. § 405(g), these matters are **REMANDED** to the SSA for further proceedings consistent with the Sixth Circuit's decision in *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018);

5. These matters are **STRICKEN** from the active docket of this Court, to be restored to the active docket upon motion by any party for good cause shown;

6. Any pending requests for relief in these actions are **DENIED AS MOOT**;

7. This is a **FINAL AND APPEALABLE ORDER** and there is **NO JUST CAUSE FOR DELAY**; and

8. A separate judgment will this date be entered.

This the 15th day of July, 2019.

Gregory F. Van Tatenhove
United States District Judge